IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Civil Action No.:

FEDERAL INSURANCE COMPANY,

                        Plaintiff,

    v.

OMEGA FLEX, INC., RB'S GAS, INC.,
McNUTT SERVICES GROUP, INC., S. FOX
ELECTRIC, LLC, and RIVER CANE
BUILDERS, LLC,

                        Defendants.

**COMPLAINT**

Plaintiff, Federal Insurance Company, through undersigned counsel, hereby sues Omega

Flex, Inc., RB's Gas, Inc., McNutt Services Group, Inc., S. Fox Electric, LLC, and River Cane

Builders, LLC, and avers as follows:

## PARTIES

1.      Plaintiff, Federal Insurance Company, is and has been at all material times a

corporation organized and existing under the laws of the State of Indiana with its principal

address at 251 North Illinois, Suite 1100, Indianapolis, Indiana 46204, and is in the business of

providing various types of insurance coverage to persons and entities throughout the country,

including the State of North Carolina.

2.      Defendant Omega Flex, Inc. is and has been at all material times a corporation

organized and existing under the laws of the State of Pennsylvania with a principal place of

business located at 451 Creamery Way, Exton, Pennsylvania. At all times relevant, Omega Flex

was in the business of manufacturing and distributing, *inter alia*, corrugated stainless steel tubing sold as TracPipe brand gas piping system and sold as CounterStrike brand gas piping system.

3.    Defendant RB's Gas, Inc., is and has been at all material times a corporation organized and existing under the laws of the State of Oklahoma, with a principal address of 30 London Road, Asheville, NC 28803, the president and registered agent of which is Dennis R. Sims, at 30 London Road, Asheville, NC 28803.

4.    Defendant McNutt Services Group, Inc. is and has been at all material times a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 169 Palmer Street, Tryon, NC 28782, the registered agent to which is Dena Huber, 45 Loop Road, Arden, NC 28704 and the president of which is Joe Bajjani, 260 The Bluffs, Austell, GA 30168.

5.    Defendant S. Fox Electric, LLC is and has been at all material times a limited liability company organized and existing under the laws of the State of North Carolina, the managing general principal and registered agent of which is Steven Alvin Fox of 126 Churchview Drive, Leicester, NC 28748-9302.

6.    Defendant River Cane Builders, LLC is and has been at all material times a limited liability corporation organized and existing under the laws of the State of North Carolina with a principal place of business located at 64 Great Aspen Way, Black Mountain, NC 28711, the principal of which was William M. McMullen, now deceased, and is now his wife, Sue D. McMullen.

2

## JURISDICTION

7.      This Court has subject matter jurisdiction of this action in that plaintiffs damages

are in excess of $75,000, and the events or omissions giving rise to this action occurred at a

residence located at 27 Samuel Lane, Candler, NC 28715.

8.      This Court has personal jurisdiction over Defendant Omega Flex, Inc. under the

North Carolina "long arm" statute,  in that:

a.      the damages alleged occurred in the State of North Carolina as a result of
actions of this defendant that this defendant committed a tort and caused injury to
property within this state arising out of an act or omission outside the state;

b.      Omega Flex, Inc. does business and performs work and/or service in this
state by selling its products and providing training to businesses and persons located in
this state for the purpose of installation or use of its products on property in this state.

c.      Omega Flex, Inc. has at least one National Sales Manager whose territory
for sales and training includes the State of North Carolina.

9.      Subjecting Omega Flex, Inc. to the jurisdiction of this Court does not offend

traditional notions of fair play and substantial justice in that this defendant purposefully availed

itself of the laws of the State of North Carolina by:

a.      designing the product that is the subject of this action for the North Carolina
market;

b.      advertising in and/or to the North Carolina market;

c.      establishing channels for providing regular advice to users or consumers of this
product in the State of North Carolina;

d.      marketing this and other products through a distributor who has agreed to serve as
a sales agent, retailer, or dealership in the State of North Carolina;

e.      shipping products to persons in the State of North Carolina for use by contractors,
consumers and homeowners; and/or

f.      otherwise engaging in continuous and systematic contacts with the State of North
Carolina as may be developed through discovery.

3

10.     Venue is proper before this court in that the causes of action below are for damages as a result of injury to real and personal property and the events giving rise to these causes of action occurred at 27 Samuel Lane, Candler, NC 28715.

## FACTUAL ALLEGATIONS

11.     This case pertains to a fire of April 12, 2013 to a residence owned by Brian Jones, located at 27 Samuel Lane, Candler, NC 28715 ("the subject residence") emanating from a flexible gas tubing product known as Corrugated Stainless Steel Tubing ("CSST").

12.     On a date prior to the occupancy of the subject residence, Brian Jones entered into an agreement with William McMullen for the construction of the subject residence, which was substantially completed on or after October 7, 2007.

13.     At the time of the construction, the contracting company that William McCullen used was represented to be River Cane Builders, LLC.

14.     After the residence was certified for occupancy, Brian Jones took possession of the subject residence.

15.     At all times relevant and material hereto, Plaintiff had in force and effect a policy of insurance issued to Brian Jones, its insured, that provided insurance for his property located at the subject residence.

16.     The subject residence featured a natural gas distribution system consisting primarily of corrugated stainless steel tubing ("CSST").

17.     The CSST installed in the subject residence was of two types.

4

18.     One type of CSST in the subject residence bore the brand name of TracPipe (hereinafter "TracPipe" or "TracPipe CSST").

19.     The second type of CSST in the subject residence bore the brand name of CounterStrike (hereinafter or "Counterstrike" or "the Counterstike CSST"), a product also manufactured by Omega Flex, Inc.

20.     Both brands of CSST were designed, manufactured, marketed, sold, and distributed by Omega Flex, Inc.

21.     CSST consists of a continuous, flexible stainless steel pipe corrugated in helical fashion to make it flexible.

22.     The exterior of CSST typically has a "skin" or coating made of PVC or polyethylene (PE).

23.     With TracPipe CSST, the coating is yellow in color.

24.     With CounterStrike CSST, the coating is black in color.

25.     For both brands of CSST, the metal wall is thin, 0.008 to 0.011 of an inch (0.02 to 0.025 centimeters), which is the equivalent of about four sheets of paper.

26.     CSST was developed in the 1980s for structures in Japan, which is susceptible to earthquakes but has very few lightning storms.

27.     The flexible nature of the pipe was advantageous for the Japanese market.

LEGAL\17169062\1 00012.0002.000/336214.000

28.     However, as time would tell, the thinness of the CSST walls make it extremely vulnerable to damage in the event that energy from lightning should strike at or near a structure.

29.     CSST was brought to the United States market in the early to mid 1990s.

30.     By 1998, Omega Flex and other CSST manufacturers became aware of instances of CSST failures in the course of lightning strikes.

31.     In the years that followed, the reports continued as the more of the product entered the market.

32.     In 2002-2003, Omega Flex, Inc. began developing and testing an alternative form of CSST that it would call CounterSrike, for the purpose of creating an alternative to TracPipe that would be less susceptible to damage from lightning than TracPipe.

33.     In 2004, Omega Flex, Inc. began to sell CounterStrike in the United States market as an alternative to TracPipe, advertising that it was superior to prior forms of then-existing CSST, which would include TracPipe.

34.     In the same year, 2004, a class action suit was filed naming Omega Flex and its TracPipe brand of CSST as a dangerous product that was susceptible to damage in the event of direct and indirect lightning affecting a home.

35.     The class action suit was settled in 2006.

36.     After the settlement of the class action lawsuit, OmegaFlex continued to sell the TracPipe brand of CSST.

LEGAL\17169062\1 00012.0002.000/336214.000

37.     Over the years, CSST failures have occurred in significant numbers in the South, given the propensity of lightning strikes in this area coupled with the growth in new homes.

38.     What causes the CSST fuel lines to fail was well documented long before this fire occurred.  It is discussed in an August 2007  paper found at http://www.toolbase.org/pdf/techinv/csst_lightningconcerns.pdf, entitled Corrugated Stainless Steel Tubing for Fuel Gas Distribution in Buildings and Concerns over Lightning Strikes, written by The NAHB Research Center, Inc., a subsidiary of the National Association of Home Builders (NAHB)  (hereinafter "the August 2007 NAHB Report").

39.     The problem with CSST starts with its extreme thinness of 0.011 inch or 0.028 cm.

40.     CSST reacts badly not just to a direct lightning strike but to an "indirect" lightning strike, *i.e.*, a strike that does not hit the structure but hits somewhere outside the structure.

41.     When lightning strikes, the flash is brief (a fraction of a second).

42.     Even with a direct lighting strike to metal on a house, there is insufficient time and heat to actually penetrate traditional metal components on a home.

43.     CSST is not a traditional metal component.

44.     A typical lightning arc can produce 3 to 5 coulombs, which is 30 to 50 times more than needed to perforate CSST.

7

45.     Such lightning arcs will not perforate black steel or iron pipe with its much greater resistance to perforation.

46.     The thickness of CSST falls below International Standards that specify the minimum dimensions and cross-sectional area for lightning air terminal conductors, air termination rods, and down conductors.

47.     For stainless steel this is 2 mm thickness (0.080 inch) and 60 mm squared area.

48.     A one-inch diameter piece of CSST has a thickness of only 1/8 and a cross-sectional area of only 1/3 of the requirements of this standard.

49.     The lighting involved in the subject incident found its way inside the structure and to the CSST indirectly, by transferring from another metal system in the house to the CSST.

50.     When lightning strikes, either by striking something on the structure or by striking something nearby the structure, the energy will seek a path to ground, *i.e.*, the energy will seek conductive materials to travel along and move toward ground.

51.     While seeking to go to ground, the energy can and does on occasion transfer or "jump" from one conductive material to another conduct material, such as CSST tubing.

52.     When energy enters CSST from another conductive material, the energy will continue seeking to go to ground from the CSST and the energy can and does on occasion transfer or "jump" from the CSST to another conductive material.

LEGAL\17169062\1 00012.0002.000/336214.000

53. The transfer of energy from or to the CSST can occur when there is another metallic circuit or item, such as a chimney flue or HVAC duct or gang nail plate or copper water line, near the CSST.

54. When there is a transfer of voltage from or to the CSST, an electrical arcing event can occur at a specific location on the CSST.

55. An electrical arc has been defined as, "A high-temperature luminous electric discharge across a gap or through a medium such as charred insulation." NFPA 921: Guide for Fire and Explosion Investigations, §3.3.7 (2011 Edition) (citing NFPA 654, Standard for the Prevention of Fire and Dust Explosions from the Manufacturing Processing and Handling of Combustible Particulate Solids, 2006 edition).

56. The effect of an electrical arc is to transform the metal through which the energy runs into a hot plasma discharge.

57. Electrical arcing causes the melting and removal of material through the quick application of heat energy, known as ablation.

58. Ablation, as it pertains to CSST, results in a hole or holes forming in the CSST at location of the arcing event.

59. Once a hole is formed, the pressurized gas in the tubing will escape through the hole.

9

60.     The combination of the high heat from the arcing event and the flow of gas through the resulting hole – both occurring at the same location -- will ignite the pressurized gas and causes a blow-torch effect, which can result in a significant fire.

61.     Omega Flex, Inc. marketed TracPipe CSST as having the advantages of flexibility, ease of installation, and ability to reduce the incidents of gas leaks.

62.     The subject TracPipe CSST was installed during the original construction of the residence by a subcontractor of River Cane Builders, LLC, believed to be RB's Gas, Inc. or McNutt Services Group, Inc..

63.     S. Fox Electric, LLC, is believed to have been the electrical contractor involved during the original construction and would have been charged with inspecting the structure's systems for compliance with applicable electrical code and standards.

64.     On or about April 12, 2013, a thunderstorm moved into the Candler area, accompanied by rain and lightning.

65.     During the April 12, 2013 thunderstorm, lightning hit at or near the subject residence.

66.     The energy from the lightning strike, in attempting to travel to ground, migrated to the CSST and blew a hole in it, releasing natural gas.

67.     The heat from the melting event simultaneously ignited the escaping gas, causing a fire ("the fire") which substantially damaged Brian Jones's real and personal property at the subject residence.

LEGAL\17169062\1 00012.0002.000/336214.000

68.     As a result of the fire, Brian Jones has made claims to Plaintiff pursuant to his policy of insurance, and Plaintiff has reimbursed the insureds for those claims in an amount in excess of $75,000.

69.     Having paid Plaintiff's insured for the above damages pursuant to the policy of insurance, Plaintiff is subrogated to its insured's right to bring this action against those responsible for its damages.

70.     Having paid on this claim under a policy of insurance, Plaintiff proceeds with this action on the basis of the doctrine of conventional subrogation.

71.     In the alternative to the conventional subrogation basis for this claim, plaintiff is also entitled to proceed on the basis of the doctrine of equitable subrogation in that: (a) plaintiff made the payment under its insurance policy with its insured in order to protect the plantiff/subrogee/insurer's interest; (b) plaintiff did not make the payment as a volunteer but did so after a claim was presented to the plaintiff/subrogee/insurer by its insured; (c) plaintiff was not primarily liable damages incurred by its insured, but the named defendants in this action were primarily liable for the damages incurred by plaintiff/subrogee/insurer's insured; (d) plaintiff paid to its insured the entire amount that the plaintiff/subrogee/insurer owed to its insured under the policy of insurance; and (e) subrogation would not work any injustice to the rights of any person or entities.

LEGAL\17169062\1 00012.0002.000/336214.000

## COUNT I:
## NEGLIGENCE AGAINST OMEGA FLEX, INC.

72.     Plaintiff incorporates the paragraphs preceding Count I as though fully set forth herein.

73.     Defendant Omega Flex, Inc. manufactured the TracPipe CSST and the CounterStrike CSST.

74.     As the manufacturer and seller of the TracPipe CSST and CounterStrike CSST, Omega Flex, Inc. had a duty to use reasonable care in the design, development, production, and marketing of the CSST products.

75.     This duty extends to all reasonably foreseeable users or consumers of the two CSST products, including Brian Jones.

76.     In addition, this defendant had a duty after the sale of the subject CSST to warn owners or users of the product of hazards of which it later became aware.

77.     Defendant Omega Flex breached its aforesaid duties to Brian Jones in that it:

a.     failed to adequately develop either brand of CSST with strong enough exterior skins and coatings so that it was able to tolerate normal and expected conditions in the field where it was placed;

b.     failed to properly inspect and test the design and construction of its product before distributing the product en masse to the public, such as failure to do the following:

     i.     simulations of the conditions involved in a lightning strike that would show if separation distance is needed between the CSST conduit and other metallic conduits (such as a chimney flue or HVAC duct or cable);
     ii.     simulations of the conditions involved in a lightning strike that would show if bonding conductors located at the entrance are sufficient depending on the length of the conductors;
     iii.     simulations of the conditions involved in a lightning strike that would show if multiple bonding along the conductor will reduce the chances of failure;
     iv.     tests that would check the ability of CSST to withstand small fault current for a long time, as well as higher fault current for a shorter time;
     v.     tests that would identify the impedance (mainly inductance) of CSST per unit measure.

vi.    impedance testing to determine the maximum bending radius of the CSST.

vii.   tests with 8/20 impulses (representing induced surges) to see if this can damage CSST if multiple bonding is not provided.

c.     failed to warn the users of its product on the susceptibility of the gas piping system to damage in the event of a lightning system.

d.     carelessly and negligently advertised that steel pipe was similarly susceptible to damage in the event of a reasonably foreseeable lightning storm and that CSST is a suitable replacement for black pipe, when in fact CSST is more susceptible to damage in the form of holes and resulting fire in the event of a reasonably foreseeable lightning storm.

e.     either failed to conduct research on the potential hazards associated with CSST or did conduct such research but disregarded the available information;

f.     failed to take appropriate measures to ensure that the users of its product were instructed to properly ground and bond the aboveground portions of the gas piping system from the equipment;

g.     failed to warn the users of its product on importance of a lightning protection system to the structure given CSST's susceptibility to damage in the event of a potential direct lightning strike to the exterior of the structure;

h.     failed to warn the user/consumer and/or installer of the subject CSST of the substantial risk of fire or similar peril presented by the improper work done by its employees and/or subcontractors;

i.     failed to provide the user/consumer of the CSST with a product that was capable of withstanding damage to its integrity resulting from expected and typical electrical storms and lightning common to the area;

j.     failed to provide adequate communication and training to foreseeable installers and users of CSST about the importance of bonding the CSST to the HVAC system and electrical system and assuring that these systems are properly grounded;

k.     failed to provide adequate communication and training to foreseeable installers and users of CSST about the advantages of equipotential bonding (including bonding of metal systems not normally bonded to the electrical system, such as chimney flues).

l.     failed to provide adequate communication and training to foreseeable installers and users of CSST about the advantages of a lightning protection system to protect the CSST in particular;

m.     failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer of the CSST;

LEGAL\17169062\1 00012.0002.000/336214.000

n.      failed to comply with the applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

o.      failed to discontinue TracPipe CSST in favor of CounterStrike CSST when placing the CounterStrike CSST on the market in 2004;

p.      failed to discontinue TracPipe CSST in favor of CounterStrike CSST when settling a class action lawsuit in 2006;

q.      failed to warn against intermingling TracPipe CSST with CounterStrike CSST;

r.      otherwise failing to use due care under the circumstances.

78.     The TracPipe CSST was defective and unreasonably dangerous in that it was:


a.      manufactured so that is was unable to withstand damage to  its integrity resulting from electrical storms and lightning;

b.      manufactured so that it was not able to be properly grounded so that the aboveground portions of the gas piping system was not electrically continuous and bonded to any ground electrode, so that it did not comply with manufacturing instructions and other applicable codes;

c.      supplied without adequate instructions for safe use, not only to the users/consumers of the product in this case, but to any entities or individuals who would be involved in the installation of the CSST;

d.      supplied without adequate warnings of the potential failure of the CSST in the event of a lightning strike on or near a residential home;

e.      supplied without adequate warnings of the latent dangerous characteristics of its product;

f.      supplied without adequate warnings as to the dangers inherent in the improper use and installation of the CSST, not only to the users/consumers of the product in this case, but to any entities or individuals who would be involved in the installation of the CSST;

g.      defectively designed so that it did not employ safety devices that could have prevented the Fire;

h.      otherwise unreasonably dangerous and defective.


79.     The TracPipe CSST product was in the defective condition at the time that it left

the possession or control of the Defendant.

14

80.     If this defendant had taken steps to make the homeowners aware of TracPipe CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase gas appliances for the home; (d) select an alternative form of piping such as black steel pipe; (e) use only CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

81.     This count seeks damages to property other than the product itself, *i.e.*, other than to the CSST piping.

82.     The property damages that this count seeks includes the damages to the structure, damages to the contents in the house, cleaning costs, moving costs, and additional living expenses incurred as a result of not having use of the house.

83.     The product's failure was not a mere disappointed expectation in the quality of the product; its failure was a sudden, calamitous event entirely destroying the product and other property.

84.     As a direct and proximate result of the aforesaid negligent acts and omissions, Plaintiff's insured sustained real and personal property damage in an amount in excess of $75,000.00 exclusive of interest and costs, for which Defendant Omega Flex, Inc. is legally liable to Plaintiff as subrogee of Plaintiff's insured.

15

Wherefore, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant Omega Flex, Inc. in an amount in excess of $75,000.00, pre-judgment interest, together with interest and the costs of this action.

## COUNT II:
## GROSS NEGLIGENCE AGAINST OMEGA FLEX, INC.

85.     Plaintiffs incorporate the paragraphs preceding Count I as though fully set forth herein.

86.     Defendant Omega Flex, Inc. manufactured the TracPipe CSST.

87.     As the manufacturer and seller of the TracPipe CSST, Omega Flex, Inc. had a duty to use reasonable care in the design, development, production, and marketing of the TracPipe CSST product.

88.     This duty extends to all reasonably foreseeable users or consumers of the CSST product, including Brian Jones.

89.     In addition, this defendant had a duty after the sale of the subject TracPipe CSST to warn owners or users of the product of hazards of which it later became aware.

90.     Defendant Omega Flex breached its aforesaid duties to Brian Jones in that it:

a.      failed to adequately develop the CSST product with strong enough exterior skins and coatings so that it was able to tolerate normal and expected conditions in the field where it was placed;

b.      learned, starting in 1998, that the CSST product was susceptible to fires from damage the energy that can enter a structure because of the fact that walls of the CSST are very thin, but since that time:

　　　i.      failed to conduct testing of the CSST to determine the degree of its susceptibility to fire from damage from the energy of a lightning strike yet continued to sell the product to the public and failed to warn of the tendency of the product to cause fires;

　　　ii.      represented to the public that the CSST had been tested and inspected as a safe product for use in a home;

16

c.    failed to conduct testing that it could have and should have performed to determine if CSST was safe for use in a home, including:

      i.     simulations of the conditions involved in a lightning strike that would show if separation distance is needed between the CSST conduit and other metallic conduits (such as a chimney flue or HVAC duct or cable);

      ii.    simulations of the conditions involved in a lightning strike that would show if bonding conductors located at the entrance are sufficient depending on the length of the conductors;

      iii.   simulations of the conditions involved in a lightning strike that would show if multiple bonding along the conductor will reduce the chances of failure;

      iv.   tests that would check the ability of CSST to withstand small fault current for a long time, as well as higher fault current for a shorter time;

      v.    tests that would identify the impedance (mainly inductance) of CSST per unit measure.

      vi.   impedance testing to determine the maximum bending radius of the CSST.

      vii.  tests with 8/20 impulses (representing induced surges) to see if this can damage CSST if multiple bonding is not provided.

d.    Failed to respond to recommendations and warnings Omega Flex received since at least 2002 from consulting experts that the hazards from fire from CSST will be reduced if the structure in which the CSST is installed is equipped with lightning protection equipment and if the metallic systems in the structure are equipotentially, and despite such recommendations and warnings:

      i.     failed to warn the installers and users of its product of the importance of a lightning protection system to the structure given CSST's susceptibility to damage in the event of a potential direct lightning strike to the exterior of the structure;

      ii.    failed to warn the installer and user of its product about the advantages of equipotential bonding (including bonding of metal systems not normally bonded to the electrical system, such as chimney flues);

      iii.   advertised that steel pipe was similarly susceptible to damage in the event of a reasonably foreseeable lightning storm and that CSST is a suitable replacement for black pipe or steel pipe, when in fact CSST is more susceptible to damage in the form of holes and resulting fire in the event of a reasonably foreseeable lightning storm.

      iv.   failed to provide the user/consumer of the CSST with a product that was capable of withstanding damage to its integrity resulting from expected and typical electrical storms and lightning common to the area;

      v.    provided CounterStrike CSST as an alternative product, but failed to explain that TracPipe was inferior to CounterStrike CSST;

      vi.   provided CounterStrike CSST as an alternative product, but failed to warn against mingling the use of TracPipe CSST with CounterStrike CSST;

LEGAL\17169062\1 00012.0002.000/336214.000

       vii.    provided CounterStrike CSST as an alternative product, but failed to remove TracPipe CSST from the market.

e.    failed to remove TracPipe from the U.S. market after settling a class action lawsuit in 2006.

f.    failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to real and personal property of the user/consumer of the CSST;

g.    failed to comply with the applicable regulations, guidelines, policies, procedures and/or industry customs and/or practices; and

h.    otherwise failing to use due care under the circumstances.

91.    The above acts and/or omissions constitute  gross negligence of this Defendant, its agents, servants and/or employees.

92.    If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase gas appliances for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use only CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

93.    This count seeks damages to property other than the product itself, *i.e.*, other than to the CSST piping.

LEGAL\17169062\1 00012.0002.000/336214.000

94.     The property damages that this count seeks includes the damages to the structure, damages to the contents in the house, cleaning costs, moving costs, and additional living expenses incurred as a result of not having use of the house.

95.     The product's failure was not a mere disappointed expectation in the quality of the product; its failure was a sudden, calamitous event entirely destroying the product and other property.

96.     As a direct and proximate result of the aforesaid negligent, careless and/or reckless acts and/or omissions, Plaintiff's insured sustained real and personal property damage in an amount in excess of $75,000.00 exclusive of interest and costs, for which Defendant Omega Flex, Inc. is legally liable to Plaintiff as subrogee of Plaintiff's insured.

Wherefore, Plaintiff respectfully requests that this Court enter judgment in its favor and against Defendant Omega Flex, Inc. in an amount in excess of $75,000.00, pre-judgment interest, together with interest and the costs of this action.

## COUNT III:
## NEGLIGENCE AGAINST RB'S GAS, INC.

97.     Plaintiff incorporates the paragraphs preceding Count I as though fully set forth herein but does not incorporate the allegations of any of the Counts asserted in this action.

98.     This count is in the alternative to all other counts.

99.     Defendant RB's Gas, Inc. served as a subcontractor during the construction of the subject residence, which was a dwelling, for the purpose of providing gas piping.

100.    Defendant knew when it was performing its work that the building was intended for use as a dwelling to the first purchaser of the subject residence.

101.    Brian Jones was the first purchaser to occupy the subject residence and use the subject residence as a dwelling.

102.    This defendant, as the gas piping subcontractor during the construction of the subject residence, owed a duty of care to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

103.    That duty of care extended to the first owner/occupants of the home, Brian Jones.

104.    Defendant breached its aforesaid duties in one or more of the following ways:

a.    failed to adequately inspect and supervise the work of its employees and/or subcontractors;

b.    failed to properly coordinate the work of its agents, workmen, servants and subcontractors;

c.    failed to properly define the tasks and responsibilities of its agents, workmen, servants and subcontractors;

d.    failed to properly inspect the design and construction work of its agents, workmen, servants and subcontractors;

e.    either failed to conduct research on the potential hazards associated with CSST or did conduct such research but disregarded the available information;

f.    failed to ensure that the CSST system was properly installed, so that it did not comply with manufacturing instructions and other applicable codes;

g.    failed to design and build the subject home with a proper electrical system;

h.    failed to design and build the subject home with a proper gas system;

i.    utilized components in the home and building systems that were not appropriate or acceptable;

j.    failed to warn the owners of the substantial risk of fire or similar peril presented by the improper work done by its employees and/or subcontractors;

k.    failed to provide the owners with a home that was capable of withstanding damage to its building systems resulting from electrical storms and lightning;

l.    allowed the addition of a segment of TracPipe CSST to a line of Counterstrike CSST;

m.    failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to the owners' real and personal property;

20

n.    failed to comply with all other applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

o.    otherwise failed to use due care under the circumstances.

105.    If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase a chimney for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

106.    As a direct and proximate result of the aforesaid negligent acts and/or omissions, the Byers sustained real and personal property damage in an amount in excess of $75,000.00 exclusive of interest and costs, for which this Defendant is legally liable and for which Plaintiff has a right of subrogation.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

LEGAL\17169062\1 00012.0002.000/336214.000

## COUNT IV:
## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
## AGAINST RB'S GAS, INC.

107.    Plaintiff incorporates the paragraphs preceding Count I as though fully set forth herein but does not incorporate the allegations of any of the Counts asserted in this action.

108.    This count is in the alternative to all other counts.

109.    Prior to the fire, the general contractor for the construction of the home entered into a valid, enforceable contract, in writing, with Brian Jones for the purpose of constructing the building that would become the subject residence.

110.    Prior to the fire, RB's Gas, Inc. entered into a subcontract with the general contractor for the purpose of supplying the gas line during the construction of the subject residence, which would become a dwelling.

111.    At the time of the contract entered into by the general contractor and RB's Gas, Inc., this defendant knew that the building would become a residence owned and occupied by Brian Jones, who would become the first owner and occupant of the building as a dwelling.

112.    This defendant knew when it was performing its work that the building was intended for use as a residence that would serve as a dwelling to Brian Jones.

113.    It was the clear and/or manifest intent of the contracting parties that they would primarily and directly benefit Brian Jones.

114.    The benefit conferred on Brian Jones by virtue of the contract was not merely incidental.

115.    Brian Jones was the first resident to occupy the subject residence and use the subject residence as a dwelling.

LEGAL\17169062\1 00012.0002.000/336214.000

116.    Pursuant to the subcontract, this defendant was responsible for defective materials and/or workmanship regarding the gas piping system and owed a duty of care to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

117.    In undertaking to perform the contract, this Defendant assumed a duty which extended directly to Brian Jones to assure that the subject residence would be free of defective materials and/or workmanship regarding the gas piping system and to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

118.    As a result of defects in material and/or workmanship, the subject residence was not properly protected from the danger of fire in the event that an electrical surge entered the subject residence.

119.    This defendant breached the duty to assure that the subject residence would be free of defective materials and/or workmanship regarding the gas piping system and to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

120.    If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase a chimney for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use only CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well

above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

121.    As a proximate result of the breaches of duty alleged above, the damages ensued.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT V:
## NEGLIGENCE AGAINST MCNUTT SERVICES GROUP, INC.

122.    Plaintiff incorporates the paragraphs preceding Count I as though fully set forth herein but does not incorporate the allegations of any of the Counts asserted in this action.

123.    This count is in the alternative to all other counts.

124.    Defendant McNutt Services Group, Inc.  served as a subcontractor during the construction of the subject residence, which was a dwelling, for the purpose of providing mechanical equipment, including the installation and/or inspection of gas piping.

125.    Defendant knew when it was performing its work that the building was intended for use as a dwelling to the first purchaser of the subject residence.

126.    Brian Jones was the first purchaser to occupy the subject residence and use the subject residence as a dwelling.

127.    This defendant, as the mechanical subcontractor during the construction of the subject residence, owed a duty of care to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

128.    That duty of care extended to the first owner/occupants of the home, Brian Jones.

24

129. Defendant breached its aforesaid duties in one or more of the following ways:

a.      failed to adequately inspect and supervise the work of its employees and/or subcontractors;

b.      failed to properly coordinate the work of its agents, workmen, servants and subcontractors;

c.      failed to properly define the tasks and responsibilities of its agents, workmen, servants and subcontractors;

d.      failed to properly inspect the design and construction work of its agents, workmen, servants and subcontractors;

e.      either failed to conduct research on the potential hazards associated with CSST or did conduct such research but disregarded the available information;

f.      failed to ensure that the CSST system was properly installed, so that it did not comply with manufacturing instructions and other applicable codes;

g.      failed to design and build the subject home with a proper electrical system;

h.      failed to design and build the subject home with a proper gas system;

i.      utilized components in the home and building systems that were not appropriate or acceptable;

j.      failed to warn the owners of the substantial risk of fire or similar peril presented by the improper work done by its employees and/or subcontractors;

k.      failed to provide the owners with a home that was capable of withstanding damage to its building systems resulting from electrical storms and lightning;

l.      allowed the addition of a segment of TracPipe CSST to a line of Counterstrike CSST;

m.      failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to the owners' real and personal property;

n.      failed to comply with all other applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

o.      otherwise failed to use due care under the circumstances.

LEGAL\17169062\1 00012.0002.000/336214.000

130.    If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase a chimney for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

131.    As a direct and proximate result of the aforesaid negligent acts and/or omissions, the Byers sustained real and personal property damage in an amount in excess of $75,000.00 exclusive of interest and costs, for which this Defendant is legally liable and for which Plaintiff has a right of subrogation.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

### COUNT VI:
### BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
### AGAINST MCNUTT SERVICES GROUP, INC.

132.    Plaintiff incorporates the paragraphs preceding Count I as though fully set forth herein but does not incorporate the allegations of any of the Counts asserted in this action.

133.    This count is in the alternative to all other counts.

LEGAL\17169062\1 00012.0002.000/336214.000

134.     Prior to the fire, the general contractor for the construction of the home entered into a valid, enforceable contract, in writing, with Brian Jones for the purpose of constructing the building that would become the subject residence.

135.     Prior to the fire,  McNutt Services Group, Inc. entered into a subcontract with the general contractor for the purpose of serving as a mechanical subcontractor, including supplying or inspecting the gas line, during the construction of the subject residence, which would become a dwelling.

136.     At the time of the contract entered into by the general contractor and McNutt Services Group, Inc., this defendant knew that the building would become a residence owned and occupied by Brian Jones, who would become the first owner and occupant of the building as a dwelling.

137.     This defendant knew when it was performing its work that the building was intended for use as a residence that would serve as a dwelling to Brian Jones.

138.     It was the clear and/or manifest intent of the contracting parties that they would primarily and directly benefit Brian Jones.

139.     The benefit conferred on Brian Jones by virtue of the contract was not merely incidental.

140.     Brian Jones was the first resident to occupy the subject residence and use the subject residence as a dwelling.

141.     Pursuant to the subcontract, this defendant was responsible for defective materials and/or workmanship regarding the gas piping system and owed a duty of care to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

27

142.     In undertaking to perform the contract, this Defendant assumed a duty which extended directly to Brian Jones to assure that the subject residence would be free of defective materials and/or workmanship regarding the gas piping system and to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

143.     As a result of defects in material and/or workmanship, the subject residence was not properly protected from the danger of fire in the event that an electrical surge entered the subject residence.

144.     This defendant breached the duty to assure that the subject residence would be free of defective materials and/or workmanship regarding the gas piping system and to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

145.     If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase a chimney for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use only CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

LEGAL\17169062\1 00012.0002.000/336214.000

146.    As a proximate result of the breaches of duty alleged above, the damages ensued.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT VII:
## NEGLIGENCE AGAINST S. FOX ELECTRIC, LLC

147.    Plaintiff incorporates the paragraphs preceding Count I as though fully set forth herein but does not incorporate the allegations of any of the Counts asserted in this action.

148.    This count is in the alternative to all other counts.

149.    Defendant S. Fox Electric, LLC served as a subcontractor during the construction of the subject residence, which was a dwelling, for the purpose of providing electrical wiring and otherwise overseeing the electrical aspects of the construction, including inspection of the gas piping system to determine if it was compliant with codes, standards, and applicable installation instructions.

150.    Defendant S. Fox Electric, LLC served as a subcontractor during the construction of the subject residence, which was a dwelling, for the purpose of providing electrical service, including inspection of the gas piping system to determine if it was compliant with codes, standards, and applicable installation instructions.

151.    Defendant knew when it was performing its work that the building was intended for use as a dwelling to the first purchaser of the subject residence.

152.    Brian Jones was the first purchaser to occupy the subject residence and use the subject residence as a dwelling.

LEGAL\17169062\1 00012.0002.000/336214.000

153.    This defendant, as the electrical subcontractor during the construction of the subject residence, owed a duty of care to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

154.    That duty of care extended to the first owner/occupants of the home, Brian Jones.

155.    Defendant breached its aforesaid duties in one or more of the following ways:

a.    failed to adequately inspect and supervise the work of its employees and/or subcontractors;

b.    failed to properly coordinate the work of its agents, workmen, servants and subcontractors;

c.    failed to properly define the tasks and responsibilities of its agents, workmen, servants and subcontractors;

d.    failed to properly inspect the design and construction work of its agents, workmen, servants and subcontractors;

e.    either failed to conduct research on the potential hazards associated with CSST or did conduct such research but disregarded the available information;

f.    failed to ensure that the CSST system was properly installed, so that it did not comply with manufacturing instructions and other applicable codes;

g.    failed to design and build the subject home with a proper electrical system;

h.    failed to design and build the subject home with a proper gas system;

i.    utilized components in the home and building systems that were not appropriate or acceptable;

j.    failed to warn the owners of the substantial risk of fire or similar peril presented by the improper work done by its employees and/or subcontractors;

k.    failed to provide the owners with a home that was capable of withstanding damage to its building systems resulting from electrical storms and lightning;

l.    allowed the addition of a segment of TracPipe CSST to a line of Counterstrike CSST;

m.    failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to the owners' real and personal property;

30

n.     failed to comply with all other applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

o.     otherwise failed to use due care under the circumstances.

156.     If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase a chimney for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

157.     As a direct and proximate result of the aforesaid negligent acts and/or omissions, the Byers sustained real and personal property damage in an amount in excess of $75,000.00 exclusive of interest and costs, for which this Defendant is legally liable and for which Plaintiff has a right of subrogation.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

LEGAL\17169062\1 00012.0002.000/336214.000

## BREACH OF THIRD-PARTY BENEFICIARY CONTRACT
## AGAINST S. FOX ELECTRIC, LLC

158.    Plaintiff incorporates the paragraphs preceding Count I as though fully set forth herein but does not incorporate the allegations of any of the Counts asserted in this action.

159.    This count is in the alternative to all other counts.

160.    Prior to the fire, the general contractor for the construction of the home entered into a valid, enforceable contract, in writing, with Brian Jones for the purpose of constructing the building that would become the subject residence.

161.    Prior to the fire,  S. Fox Electric, LLC entered into a subcontract with the general contractor for the purpose of serving as a mechanical subcontractor, including supplying or inspecting the gas line, during the construction of the subject residence, which would become a dwelling.

162.    At the time of the contract entered into by the general contractor and S. Fox Electric, LLC, this defendant knew that the building would become a residence owned and occupied by Brian Jones, who would become the first owner and occupant of the building as a dwelling.

163.    This defendant knew when it was performing its work that the building was intended for use as a residence that would serve as a dwelling to Brian Jones.

164.    It was the clear and/or manifest intent of the contracting parties that they would primarily and directly benefit Brian Jones.

165.    The benefit conferred on Brian Jones by virtue of the contract was not merely incidental.

166. Brian Jones was the first resident to occupy the subject residence and use the subject residence as a dwelling.

167. Pursuant to the subcontract, this defendant was responsible for defective materials and/or workmanship regarding the grounding the bonding of gas piping system and owed a duty of care to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

168. In undertaking to perform the contract, this Defendant assumed a duty which extended directly to Brian Jones to assure that the subject residence would be free of defective materials and/or workmanship regarding the grounding and bonding of gas piping system and to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

169. As a result of defects in material and/or workmanship, the subject residence was not properly protected from the danger of fire in the event that an electrical surge entered the subject residence.

170. This defendant breached the duty to assure that the subject residence would be free of defective materials and/or workmanship regarding the grounding and bonding of the gas piping system and to properly oversee all work performed at the subject residence and to make certain that the work was performed in a safe and workmanlike manner.

171. If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase a chimney for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use only

CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

172.     As a proximate result of the breaches of duty alleged above, the damages ensued.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT IX:
## BREACH OF CONTRACT AND EXPRESS WARRANTY
## AGAINST RIVER CANE BUILDERS, LLC

173.     Plaintiff incorporates the paragraphs preceding Count I as though fully set forth herein but does not incorporate the allegations of any of the Counts asserted in this action.

174.     This count is in the alternative to all other counts.

175.     On a date prior to the occupancy of the subject residence, Brian Jones negotiated with River Cane Builders, LLC until entering into a contract with River Cane Builders, LLC ("general contractor") and/or its predecessor and/or its successor and/or its agent for the purpose of constructing what would become the subject residence.

176.     River Cane Builders, LLC acted as the seller of the CSST and placed the CSST product into the stream of commerce and into the subject residence.

34

177. The CSST product is the type of product that River Cane Builders, LLC is in the business of selling, installing, inspecting, and/or distributing as part of its construction of buildings.

178. Defendant expected that the product would reach the user or consumer without substantial change in the condition in which it was sold.

179. The product reached the user or consumer without substantial change in the condition in which it was sold.

180. Plaintiffs were users and/or consumers of the CSST product.

181. Having contacted with Brian Jones and having sold and installed both forms of CSST as part of the subject residence, Defendant made certain warranties, express and implied, that the CSST was merchantable for its ordinary purpose, fit for its intended purpose and safe for normal use, and that the subject residence would be free of defects in workmanship and materials.

182. Contrary to these warranties of merchantability, fitness and safety, and warranties regarding defects in workmanship and materials, express and implied, the CSST failed to operate properly when used in the manner ordinary purpose for which it was intended to be used, and therefore, Defendant breached the above-described warranties.

183. The product was defective in that it was:

a. manufactured so that is was unable to withstand damage to its integrity resulting from electrical storms and lightning;

b. manufactured so that it was not able to be properly grounded so that the aboveground portions of the gas piping system was not electrically continuous and bonded to any ground electrode, so that it did not comply with manufacturing instructions and other applicable codes;

35

c.      supplied without adequate instructions for safe use, not only to the users/consumers of the product in this case, but to any entities or individuals who would be involved in the installation of the CSST;

d.      supplied without adequate warnings of the potential failure of the CSST in the event of a lightning strike on or near a residential home;

e.      supplied without adequate warnings of the latent dangerous characteristics of its product;

f.      supplied without adequate warnings as to the dangers inherent in the improper use and installation of the CSST, not only to the users/consumers of the product in this case, but to any entities or individuals who would be involved in the installation of the CSST;

g.      defectively designed so that it did not employ safety devices that could have prevented the fire;

h.      otherwise unreasonably dangerous and defective.

184.    The product was in the defective condition at the time that it left the possession or control of the Defendant.

185.    The product was expected to and did reach the owners of the product alleged herein without substantial change in its condition.

186.    The product was used for its intended purpose and/or for a purpose that was reasonably foreseeable by Defendant.

187.    The homeowners never used the CSST for anything other than its expected manner of handling or consumption.

188.    This count seeks damages to property other than the product itself, *i.e.*, other than to the CSST piping.

189.    The property damages that this count seeks includes the damages to the structure, damages to the contents in the house, cleaning costs, moving costs, and additional living expenses incurred as a result of not having use of the house.

190.    The product could have been sold with an alternative design without substantially impairing the usefulness, practicality, or desirability of the product, in that the product could have been one that was subjected to and/or included one or more of the following protective measures:

    a.    manufactured with thicker walls so that is was able to withstand damage to its integrity resulting from electrical storms and lightning;

    b.    manufactured so that it was able to be properly grounded;

    c.    supplied with adequate instructions for safe use, not only to the users/consumers in this case, but to any entities or individuals who would be involved in the installation of the CSST;

    d.    supplied with adequate warnings of the potential failure of the CSST in the event of a lightning strike on or near a residential home;

    e.    supplied with adequate warnings of the latent dangerous characteristics of its product;

    f.    supplied with adequate warnings as to the dangers inherent in the improper use and installation of the CSST, not only to the users/consumers in this case, but to any entities or individuals who would be involved in the installation of the CSST;

    g.    designed so that it employed safety devices that could have prevented the Fire;

    h.    other potential safety features that might be revealed in the course of discovery.

191.    If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase gas appliances for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use only CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short

lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning

protection system for the house; and/or (v) such other protective measures as were reasonably

available at the time but of which the homeowners were not informed.

192.     As a direct and proximate result of the defective condition as set forth in the

foregoing paragraph, the subject CSST ignited a fire, causing extensive damage to Plaintiff's

insured's property.

193.     The defective condition and subsequent malfunctioning of the CSST was the

direct and proximate cause of the Plaintiffs' real and personal property damages in an amount in

excess of $75,000.00 exclusive of interest and costs, for which this Defendant legally liable.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against this

Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be

properly awarded by the Court.

## COUNT X:
## BREACH OF THE IMPLIED WARRANTY OF HABITABILITY
## AGAINST RIVER CANE BUILDERS, LLC

194.     Plaintiff incorporates the paragraphs preceding Count I as though fully set forth

herein but does not incorporate the allegations of any of the Counts asserted in this action.

195.     This count is in the alternative to all other counts.

196.     Defendant River Cane Builders, LLC and/or its predecessor and/or its successor

and/or its agent was the general contractor that constructed the subject residence, which was a

dwelling.

197.     River Cane Builders, LLC  knew when it was building what would become the

subject residence that it was intended to serve as a dwelling to the first purchaser of the subject

residence.

LEGAL\17169062\1 00012.0002.000/336214.000

198.     Brian Jones was the first purchaser to occupy the subject residence and use the

subject residence as a dwelling.

199.     As the original builder that built the subject property, River Cane Builders, LLC

had a duty to render the home habitable and impliedly warranted that the home was habitable.

200.     The warranty of habitability extended to Brian Jones.

201.     This Defendant breached the implied warranty of habitability in that it or its agent

or its subcontractor:

a.       failed to adequately inspect and supervise the work of its employees and/or
subcontractors;

b.       failed to properly coordinate the work of its agents, workmen, servants and
subcontractors;

c.       failed to properly define the tasks and responsibilities of its agents, workmen,
servants and subcontractors;

d.       failed to properly inspect the design and construction work of its agents,
workmen, servants and subcontractors;

e.       either failed to conduct research on the potential hazards associated with CSST or
did conduct such research but disregarded the available information;

f.       failed to ensure that the CSST system was properly installed, so that it did not
comply with manufacturing instructions and other applicable codes;

g.       failed to design and build the subject home with a proper electrical system;

h.       failed to design and build the subject home with a proper gas system;

i.       utilized components in the home and building systems that were not appropriate
or acceptable;

j.       failed to warn the owners of the substantial risk of fire or similar peril presented
by the improper work done by its employees and/or subcontractors;

k.       failed to provide the owners with a home that was capable of withstanding
damage to its building systems resulting from electrical storms and lightning;

LEGAL\17169062\1 00012.0002.000/336214.000

l.     allowed the addition of a segment of TracPipe CSST to a line of Counterstrike CSST;

m.     failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to the owners' real and personal property;

n.     failed to comply with all other applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

o.     otherwise failed to use due care under the circumstances.

202.     If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase gas appliances for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

203.     The subject home subject home failed to meet the ordinary, normal standards reasonably expected of living quarters of comparable kind.

204.     The subject home was rendered inhabitable in that fire spread from the defective CSST to its surrounding areas leading to fire of the home and its contents and causing the damages alleged above

LEGAL\17169062\1 00012.0002.000/336214.000

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## COUNT XI:
## NEGLIGENCE AGAINST RIVER CANE BUILDERS, LLC

205.     Plaintiff incorporates the paragraphs preceding Count I as though fully set forth herein but does not incorporate the allegations of any of the Counts asserted in this action.

206.     This count is in the alternative to all other counts.

207.     Defendant River Cane Builders, LLC and/or its predecessor and/or its successor and/or its agent was the company that constructed the subject residence, which was a dwelling.

208.     Defendant knew when it was building what would become the subject residence that it was intended for use as a dwelling to the first purchaser of the subject residence.

209.     Brian Jones was the first purchasers to occupy the subject residence and use the subject residence as a dwelling.

210.     At all relevant times, River Cane Builders, LLC, as general contractor of the subject residence, owed a duty of care to properly oversee all work performed at the subject residence by subcontractors hired by River Cane Builders, LLC and to make certain that the work was performed in a safe and workmanlike manner.

211.     That duty of care extended to the first owner/occupants of the home, Brian Jones.

212.     This Defendant breached its aforesaid duties in one or more of the following ways:

a.     failed to adequately inspect and supervise the work of its employees and/or subcontractors;

b.     failed to properly coordinate the work of its agents, workmen, servants and subcontractors;

41

c. failed to properly define the tasks and responsibilities of its agents, workmen, servants and subcontractors;

d. failed to properly inspect the design and construction work of its agents, workmen, servants and subcontractors;

e. either failed to conduct research on the potential hazards associated with CSST or did conduct such research but disregarded the available information;

f. failed to ensure that the CSST system was properly installed, so that it did not comply with manufacturing instructions and other applicable codes;

g. failed to design and build the subject home with a proper electrical system;

h. failed to design and build the subject home with a proper gas system;

i. utilized components in the home and building systems that were not appropriate or acceptable;

j. failed to warn the owners of the substantial risk of fire or similar peril presented by the improper work done by its employees and/or subcontractors;

k. failed to provide the owners with a home that was capable of withstanding damage to its building systems resulting from electrical storms and lightning;

l. allowed the addition of a segment of TracPipe CSST to a line of Counterstrike CSST;

m. failed and/or omitted to do those things necessary to avoid an unreasonable risk of harm to the owners' real and personal property;

n. failed to comply with all other applicable codes, regulations, guidelines, policies, procedures and/or industry customs and/or practices;

o. otherwise failed to use due care under the circumstances.

213. If this defendant had taken steps to make the homeowners aware of CSST's particular susceptibility to lightning-induced fires, the homeowners would have been in a position to make an informed judgment on a series of alternative options, such as: (a) not purchase the home; (b) not use gas as source of energy for the home; (c) not purchase a chimney for the home; (d) select an alternative form of piping such as black steel pipe; or (e) use only

LEGAL\17169062\1 00012.0002.000/336214.000

CounterStrike brand CSST but (i) equip all joints with electrical jumpers and ground the CSST is grounded every few feet to a suitable lightning ground strap; (ii) install lightning arrestors well above and adjacent to any CSST gas lines in the building; (iii) use CSST in short lengths only and at the ground level of the structure only; and/or (iv) purchase a lightning protection system for the house; and/or (v) such other protective measures as were reasonably available at the time but of which the homeowners were not informed.

214.    As a direct and proximate result of the aforesaid negligent acts and/or omissions, the Byers sustained real and personal property damage in an amount in excess of $75,000.00 exclusive of interest, costs, and fees, for which this Defendant is legally liable and for which Plaintiff has a right of subrogation.

WHEREFORE, Plaintiff respectfully requests the entry of a judgment against this Defendant for the damages sustained, plus prejudgment interest, costs, and fees as may be properly awarded by the Court.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues triable as of right by a jury.

Respectfully submitted this 18th day of  October  2013.


By:      /s/ John W. Reis_____
John W. Reis
NC Bar No. 25109
COZEN O'CONNOR
301 South College Street, Suite 2100
Charlotte, NC 28202
Telephone:  (704) 376-3400
Facsimile:  (704) 334-3351
Email: jreis@cozen.com
Website: www.cozen.com

43

LEGAL\17169062\1 00012.0002.000/336214.000